Rep. 133, 47 N. Y. Supp. 29. The contention of the executor must be overruled, and the balance of the fund remaining from the Edmonds mortgage paid over to the administrator of Esther Toms.

The only remaining question is the right of certain issue of Fred Toms, a grandchild of the testator, Jesse Toms. Fred intermarried with one Ella Vetal, and the issue of this marriage was a child, Jennette Toms. Fred later died. Said Jennette died without issue, and her mother, now Ella Vetal Myers, her administratrix and sole next of kin, claims the share of the estate which would have belonged to Fred Toms had he survived. Subsequently to his marriage with Ella Vetal and during her life, Fred Toms bigamously married one Dolly Wright, now May Wood, and by this marriage had three children, Harry, Fred, and Thola Toms, who are parties to this proceeding and claim Fred's share of the estate. As these children were illegitimate they cannot share in the estate. The portion which would have gone to Fred Toms, had he lived, should be paid to Ella Vetal Myers as administratrix of Jennette Toms, deceased.

Decree accordingly.

<hr>

(85 Misc. Rep. 271)

### In re HEISER'S ESTATE.

(Surrogate's Court, New York County. July, 1913.)

1. JOINT TENANCY (§ 1*)—PERSONALTY.

   There may be a joint ownership of personal property.

   [Ed. Note.—For other cases, see Joint Tenancy, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. JOINT TENANCY (§ 6*)—SURVIVORSHIP.

   The right of survivorship is the distinguishing feature of a joint tenancy.

   [Ed. Note.—For other cases, see Joint Tenancy, Cent. Dig. § 4; Dec. Dig. § 6.*]

3. TAXATION (§ 879*)—TRANSFER TAX—TRANSFERS SUBJECT.

   If the owner of property transferred a joint interest therein to another as a gift to take effect at or after the original owner's death, the interest transferred would be subject to the transfer tax law; but if joint tenants contributed from their individual funds to the purchase of the property held as joint tenants, the right of the survivor to take the entire property is not a gift, but a right derived by contract, so that it would not be subject to the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245).

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

4. TENANCY IN COMMON (§ 33*)—CONSIDERATION.

   A contract by which each of two tenants in common transfers his interest to the other, if the latter survives, is supported by a good consideration, and not subject to revocation.

   [Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 25; Dec. Dig. § 33.*]

5. EVIDENCE (§ 461*)—PAROL EVIDENCE—EXPLAINING DEED.

   Where an instrument creating a joint tenancy in property was not ambiguous, evidence that the instrument was executed for the purpose of

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

facilitating the administration of the estate when one of the parties should die, so that the survivor would take what was left as a gift, was incompetent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

6. GIFTS (§ 18*)—"GIFT INTER VIVOS."

To constitute a "gift inter vivos," it is essential that there be a delivery by the donor, coupled with an intention to transfer the immediate right of ownership in, and dominion over, the property.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 29–33; Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 4, pp. 3091–3093; vol. 8, p. 7671.]

7. GIFTS (§ 56*)—GIFTS CAUSA MORTIS—REALTY.

Real property is not the subject of a gift causa mortis.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 105; Dec. Dig. § 56.*]

8. GIFTS (§ 59*)—GIFT CAUSA MORTIS—EXPECTATION OF DEATH.

A gift was not one causa mortis, where the donor was not in extremis, or in immediate danger of death.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 108; Dec. Dig. § 59.*]

9. TAXATION (§ 879*)—TRANSFER TAX—"GIFT IN CONTEMPLATION OF DEATH."

Since a contract by which tenants in common agreed to turn their holding into a joint tenancy, so that the survivor should take the whole property, was supported by a valuable consideration, the transfer of the property thereunder was not a "gift in contemplation of death," within the meaning of that phrase in the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245).

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*

For other definitions, see Words and Phrases, vol. 4, pp. 3087–3091; vol. 8, p. 7670.]

10. TAXATION (§ 879*)—TRANSFER TAX—GIFT INTER VIVOS.

Property may be transferred by gift inter vivos, or for a valuable consideration, without being subject to the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245); a transfer only being subject to the law when made in the particular manner prescribed thereby.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

In the matter of the estate of Sarah Heiser. From an order assessing a transfer tax, the State Comptroller appeals. Affirmed.

Thomas E. Rush, of New York City (Ellwood M. Rabenold, of New York City, of counsel), for State Comptroller.

De Witt, Lockman & De Witt, of New York City, for executrix.

FOWLER, S. This appeal is taken by the state comptroller from an order assessing a tax upon the estate of the decedent. The appraiser reported that real estate, of the value of $45,800, and personal property, consisting of bonds and mortgages, of the value of $156,-166.69, were held by the decedent and her sister, Maria S. Heiser, as joint tenants, and that the decedent's interest in the property was ex-

empt from taxation. The state comptroller contends that the decedent's interest in this property passed to the executrix, who was her joint tenant, as a gift intended to take effect at or after death, and that it is therefore subject to a transfer tax.

[1] The decedent and her sister, Maria S. Heiser, were originally tenants in common of the real estate. They conveyed it to a third person, and in the deed by which it was reconveyed to them it was expressly declared that the conveyance was made to them as joint tenants, and not as tenants in common. The bonds and mortgages were originally held by the decedent and her sister, Maria S. Heiser, as tenants in common; but by separate instruments they were assigned to a third person, and then assigned and transferred by such third person to the decedent and her sister as joint tenants. Joint ownership of personal property is recognized by the law of this state. Matter of Kaupper, 141 App. Div. 54, 125 N. Y. Supp. 878; Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980.

[2, 3] The right of the survivor to the entire property held by them as joint tenants is the distinguishing characteristic of this species of ownership, and if all the property held jointly belonged originally to one of the parties, and the rights of a joint owner were conferred by the original owner upon his joint tenant as a gift intended to take effect at or after death, the value of the interest passing to the survivor would be subject to the provisions of the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245). But if the joint tenants have contributed out of their individual funds to the purchase of the property held by them as joint tenants, the right of the survivor to take the entire property is not a gift from the other joint tenant, but a right derived from the contract entered into between them at the time the instrument creating the joint tenancy was executed.

[4] A contract by which each of two persons holding property as tenants in common transfers his interest therein to the other if he survives is supported by a good consideration and is not subject to revocation. Augsbury v. Shurtliff, 180 N. Y. 147, 72 N. E. 927. When the decedent and her sister, as tenants in common of the bonds and mortgages mentioned in the appraiser's report agreed with each other to transform the nature of their tenancy in the property from tenants in common to joint tenants, each of them surrendered rights over the property in consideration of the right of survivorship conferred by the instrument creating the joint tenancy. Instead of each owning an undivided one-half of the property, subject to sale, assignment, or to transfer by will, each took under the instrument creating the joint tenancy an undivided half, which was not subject to sale, assignment, or to transfer by will. Each, therefore, parted with a valuable consideration for the right to take the entire property as survivor.

[5] In the testimony given before the appraiser by Maria S. Heiser, the surviving joint tenant, she testified that the execution of the instrument, by virtue of which they held the property as joint tenants, was "for the purpose of facilitating the administration of the estate when one should die, so that the survivor would take what was left as a gift." As there is no ambiguity in the instrument creating the joint

tenancy, this testimony as to its effect was incompetent. In the absence of an allegation of fraud, it is immaterial what purpose the parties to the instrument may have intended to accomplish by its execution, because the instrument itself expressly declares that the assignment of the bonds and mortgages was made to them as joint tenants. The right of the survivor to take the entire property may accord with the witness' conception of a gift, but it was not a gift within the legal signification of that word.

[6-9] It was not a gift inter vivos, because there was no delivery by the donor of the thing constituting the gift, coupled with an intention to transfer the immediate right of ownership in and dominion over the property to the donee. Matter of Bolin, 136 N. Y. 177, 32 N. E. 626; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531. It was not a gift causa mortis, because real property cannot be the subject of such a gift, and it does not appear that either of the parties to the instrument creating the joint tenancy was in extremis, or dangerously ill, or in immediate peril of losing her life. Neither was it a gift made in contemplation of death, within the meaning of that phrase in the transfer tax statute, because it was made for a valuable consideration, and was contingent in each case upon either one of the joint tenants surviving the other.

[10] It was also suggested before the transfer tax appraiser that the joint tenancy was created for the purpose of avoiding taxation under the Transfer Tax Law. It is immaterial for what purpose the joint tenancy was created, as property may be transferred by gift inter vivos, or for a valuable consideration, and not be subject to the provisions of the Transfer Tax Law. It is only when it is transferred in the particular manner prescribed by the transfer tax statute that it is subject to the tax. A transfer effected in any other form, irrespective of the motive which prompted it, is not subject to the tax. As the transfer tax statute does not impose a tax upon a transfer of property which is made for a valuable consideration, and as it appears that the transfer of the interest of the decedent in the bonds and mortgages, as well as the real estate above mentioned, was for a valuable consideration, the interest accruing to the survivor upon the death of the decedent is not subject to the provisions of the Transfer Tax Law.

The order fixing tax will therefore be affirmed.