The People of the State of New York, Plaintiff, *v.* Andrew J. Horvatt and Others, Defendants.

Supreme Court, Otsego County, June 9, 1932.

*Clayton R. Lusk* [*Frank J. Mangan* of counsel for Thomas J. Mangan], for the defendants Thomas J. Mangan and Elmer J. Churchill, for the motion.

*Orange L. Van Horn,* for the defendant Sigmund A. Friedlander, for the motion.

*John J. Bennett, Jr., Attorney-General* [*John T. Cahill* of counsel], opposed.

Personius, J.   The defendant Andrew J. Horvatt, being already incarcerated, was not tried with the other defendants.   Whenever the defendants are referred to, we mean the defendants other than said Horvatt.

The defendants have been convicted under section 304 of the

Penal Law. They have appealed to the Appellate Division and now apply for a certificate of reasonable doubt under sections 527 and 529 of the Code of Criminal Procedure.

The learned justice who presided at the trial having expressed a preference that this application be made to some other judge, it was made to and is entertained by this court.

It may be well to first consider just what question is here presented. This application is not to determine the legality or illegality of the conviction. The Appellate Division is to say whether it should be affirmed or reversed. The purpose of this application is to determine whether there be a reasonably arguable question which ought to be settled by the appellate court before the defendants are actually incarcerated in execution of their sentences. This court is not to " determine whether the error complained of warrants the granting of a new trial, for the granting or refusing of a new trial is vested in the appellate court." (*People* v. *Hummel*, 49 Misc. 136, 138; *People* v. *Dennis*, 131 id. 62, 65; *People* v. *Wagner*, 120 id. 214, 221; *People* v. *Steppello*, 141 id. 162, 165; *People* v. *Martin*, 91 id. 107, 109.) In fact this court must be convinced " that the error complained of could not in any way have affected or prejudiced the defendant before it is warranted in denying a certificate." (*People* v. *Steppello, supra.*)

Having in mind this well-settled rule as to the function of the court upon this application, we come to a consideration of the alleged errors complained of by the defendants.

Since 1892, at least, a director who fails to administer the affairs of his bank with reasonable " care and diligence "— that is, a director who is *negligent* in the performance of his duties — is guilty of a *misdemeanor* if such a negligence results in the insolvency of the bank. (Penal Law, § 297; *People* v. *Mancuso*, 255 N. Y. 463.)

In 1912 the Legislature enacted section 304 of the Penal Law, which provides in part that any director (of a State bank) who makes a false report *with intent to deceive* (certain named persons), or who, with like intent, willfully omits to make a true entry, in any report, is guilty of a *felony*.

It would appear that the Legislature has drawn a distinction between the *negligent* conduct of a director and his *intentional* acts. The former may be a misdemeanor, the latter a felony. These defendants have been indicted and convicted under section 304 of the Penal Law charged with making a false report on the State Bank of Binghamton on November 12, 1930, with intent to deceive.

The defendants complain of many alleged errors in the receipt

of evidence, the rejection of evidence, the charge, and the opening and summation of People's counsel. It would, we think, be a needless burden to consider these in detail. They may be urged on appeal. We prefer to determine this application on other grounds.

The defendants urge that the intent to deceive, which is essential to bring them within the condemnation of said section 304, and make them guilty of a felony, must be based (1) upon defendants' actual knowledge of the falsity of their report in some particular, or (2) upon proof that they in fact made no examination but reported that they had.

The People do not concede the necessity of showing that the defendants had actual knowledge of the falsity of their report. If we understand the People's contention correctly, they say that intent to deceive may be found from a lack of diligence in making the examination — a lack of the diligence required by certain information, warnings, which they allege the defendants had.

Evidence apparently intended to show negligence or lack of diligence on the part of the defendants in ascertaining the true condition of the bank was admitted. Evidence which it is claimed established that the president of the bank was engaged in bootlegging and stock gambling was admitted on the theory that the defendants must have known thereof and thereby should have been warned and put on their guard as to his honesty. Much stress was placed upon this evidence and it was argued strenuously and at length that the defendants should have been warned thereby and should have been more diligent and that they were negligent in ascertaining the truth.

While the learned trial justice, in response to a request to charge, eliminated " inadvertence or negligence " and " ignorance " on the part of the defendants as a basis of guilty intent, he charged that on the question of intent the jury might consider all the evidence, whatever " warnings " the defendants had as to the condition of the bank, what efforts they made to ascertain the true condition and the alleged bootlegging in the bank. It was also charged in substance that the diligence of the examiners (defendants) " bears directly upon the question of intent." This savors of negligence, and a request to charge that the People must show that the defendants knew the report was false as to some material facts, etc., was declined. A similar request was declined because " it implies actual knowledge of the falsity."

We think it may be fairly said that the defendants were tried and their case submitted to the jury on the theory that intent to deceive could be found from something less than actual knowledge

on their part; that their report was false in some particular; from constructive knowledge; from negligence in searching for the truth.

This theory may be correct. We do not hold that it is not. We do say, particularly in view of the fact that said section 304 has not been construed by any appellate court, that the question presented is reasonably arguable, and that the defendants are entitled to have it passed upon by the Appellate Division before their sentence is executed and carried into effect. While negligence on the part of directors may make them guilty of a misdemeanor under said section 297, there is a serious question as to whether negligence, or anything less than actual knowledge of the falsity of their report, can make them guilty of a felony under said section 304.

To this court, it seems that something more than negligence in any degree is required to make a director guilty of an intent to deceive, a felony. One may deceive another by stating a falsehood. If he knows his statement to be false, he may fairly be held to have intended to deceive. If he does not know, if he believes his statement is true, how can he intend to deceive? To intend to deceive without knowing that he is deceiving seems inconsistent. Can negligence in any degree take the place of knowledge as a basis for intent?

There is a substantial distinction between a felony and a misdemeanor. The learned trial court here and another learned justice of this court very apparently differ in their construction of the section involved. (*People* v. *Mangan,* 140 Misc. 783.) No appellate court of this State has passed upon the question — in fact, so far as we know, this is the first conviction under the section. Whatever answer the Appellate Division may give to the question, the defendants should have their appeal determined by that court before being incarcerated or paying their fines. If the conviction is upheld, the defendants will be compelled to serve their sentences and pay their fines. No harm can be done by staying the sentence during the appeal. Otherwise, if the appellate courts should decide that the conviction was illegal, grievous harm would result to the defendants for which there would be no redress. If a defendant is " finally adjudged to be guilty of the crime as charged, his term of imprisonment is not lessened; while if he is not lawfully adjudged guilty, he is saved the humiliation of an imprisonment for which there is no redress." (*People* v. *Hummel, supra; People* v. *Steppello, supra.*)

An order and the certificate to be granted thereon may be submitted in accordance herewith. If the form thereof is not agreed upon, application for settlement may be made.