In the Matter of WILLIAM B. HERLANDS, as Special Assistant Attorney-General in Charge of Richmond County Investigation, Petitioner. FRED CARCHIETTA et al., Respondents.

Supreme Court, Special Term, Kings County, February 25, 1953.

*Francis P. Heffernan* for respondents.

*Nathaniel L. Goldstein, Attorney-General,* and *William B. Herlands, Special Assistant Attorney-General,* in person, for William B. Herlands, petitioner.

MURPHY, J. A Grand Jury has been empanelled in and for an Extraordinary Special and Trial Term of the Supreme Court, County of Richmond, pursuant to executive order, for the purpose of conducting an investigation into, among other things, " any and all acts * * * committed or omitted, in the County of Richmond, in violation of any provisions of law relating to gambling, bribery and corruption ''. Mr. Justice FELIX C. BENVENGA was designated by Governor Thomas E. Dewey to preside at such Extraordinary Special and Trial Term and the Grand Jury has been in session since November 5, 1951.

Pursuant to subpoenas served upon them, the moving parties here, Fred Carchietta, Patrick Torre, John Di Brizzi, Albert Leterile and George Policastro, appeared and were sworn as witnesses before the Grand Jury. Certain interrogatories were propounded to each of them by the Grand Jury relating to gambling activities in Richmond County, but each one refused to answer, even though the law (Penal Law, §§ 381, 584, 996) grants them full and complete immunity from prosecution for and on account of any transaction, matter or thing concerning which they might testify. (*Matter of Doyle,* 257 N. Y. 244; *People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253.) Based upon their refusals to so answer Mr. Justice BENVENGA held a hearing at which the movants were represented by counsel. He later adjudged all of the movants guilty of criminal contempt pursuant to the provisions of section 750 of the Judiciary Law and sentenced each one to imprisonment for a period of thirty days and imposed a fine of $250.

The circumstances leading up to the questions which the movant Carchietta refused to answer were that he had been in the employ of one Dalessio in connection with the latter's widespread gambling operations in Staten Island and that consequently Carchietta had personal knowledge of the matters under investigation. This knowledge he refused to disclose to the Grand Jury on the ground that while the law grants him full and

complete immunity from prosecution for and on account of any transaction, matter or thing concerning which he may testify, nevertheless immunity so granted is limited to protection from prosecution in the State of New York and does not afford him such immunity in jurisdictions other than New York; that, if he were to testify, he would expose himself to prosecution in the State of New Jersey as well as by the Federal Government. This contention was also urged on behalf of the other movants.

The present application is now addressed to this court by the contemners for certificates of reasonable doubt pursuant to the provisions of section 527 of the Code of Criminal Procedure. A preliminary objection to the application is raised by the special assistant attorney-general upon the ground that while section 527 of the Code of Criminal Procedure permits the granting of a certificate of reasonable doubt, it does not authorize the granting of a certificate pending appeal from an order entered pursuant to section 750 of the Judiciary Law. In view of the holding in *Matter of Grand Jury, Co. of Kings* (*Reardon*) (278 App. Div. 206) that a mandate of commitment under section 750 of the Judiciary Law is reviewable as a special proceeding under the Civil Practice Act and not under the provisions of the Code of Criminal Procedure, I am of the opinion that the Attorney-General's contention is well taken.

It would seem therefore that the remedy thus sought herein is not available to the contemners and that their proper procedure would have been to apply for a stay pursuant to the provisions of the Civil Practice Act (6 Carmody on New York Practice, § 215, pp. 166, 167).

Treating this application, however, as one either for a certificate of reasonable doubt or for a stay, I feel that the application in any event should be denied. Before a certificate of reasonable doubt or a stay will be granted pending appeal it must appear that the appeal presents a reasonably arguable or debatable question of law which ought to be settled by the appellate court. (*People* v. *Hummel*, 49 Misc. 136; *People* v. *Horvatt*, 144 Misc. 278; *Sakin* v. *London, New York, Shanghai Trading Corp.*, 99 N. Y. S. 2d 218.) The principles underlying the granting or refusing of a certificate of reasonable doubt are succinctly stated in *People* v. *Hummel* (*supra*, p. 137) as follows: '' The purpose of this certificate is to stay the execution of the judgment of conviction, pending an appeal, where it shall be made to appear to a Justice of the Supreme Court that ' there is reasonable doubt whether the judgment should stand, but not

otherwise;' and it is clearly the policy of the state to save convicted persons from incarceration, so long as there is any such reasonable doubt of the lawfulness of their conviction."

To support the present application the contemners reassert that they were justified in refusing to answer the questions asked of them by the Grand Jury for the reason that the answers to such questions might tend to incriminate them of crimes subject to prosecution in States other than New York or by the Federal Government. This question was exhaustively considered in the learned opinion rendered by the court upon the motion to punish the movants herein for contempt (*Matter of Herlands* [*Carchietta*], 204 Misc. 373). There seems to be no doubt but that the views expressed therein will receive appellate approval. (*Matter of Greenleaf*, 176 Misc. 566, 569, determination confirmed, *sub nom. Matter of Greenleaf* v. *Goldstein*, 266 App. Div. 658, affd. 291 N. Y. 690; see, also, other cases cited in above opinion.)

The following paragraph from the decision of Judge GOLDSTEIN of the Court of General Sessions in the *Greenleaf* case (*supra*, p. 569) is pertinent and illuminating: " The respondent points out that the immunity granted by the grand jury of New York county would not protect him against prosecution by the Federal government on the basis of information that might come to light through this investigation. No factual argument was advanced as to how the answers might even remotely involve the respondent in Federal criminal proceedings. Whether this be true or not, the grand jury has conferred all the immunity within the power of the State. There is no arrangement for reciprocity in the granting of immunity between Federal and State governments. It would not be consonant with public policy to hold that the witness can refuse to testify on this basis. Common sense and sound law both dictate that the State's investigation should not be hampered on the theory that the State does not provide immunity against Federal prosecution. As was said in *Dunham* v. *Ottinger* (243 N. Y. 423, 438) : ' While some insubstantial criticism is made of the manner in which a witness is compelled to claim immunity under the statute, the main claim is that the statute does not properly safeguard him by precluding the use of his testimony in criminal proceedings which might be instituted by the Federal government. This is true. The statute does not purport to give and could not give protection against such a prosecution. It does give ample protection against the use of such testimony in our own tribunals and it is perfectly well established that this is a sufficient immunity;

that all that the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does it, it has satisfied the requirements of the Constitution. (*Hale* v. *Henkel,* 201 U. S. 43; *Brown* v. *Walker,* 161 U. S. 591.)' "

This court is particularly impressed by the reasoning of Mr. Justice BENVENGA when he wrote in the instant case *Matter of Herlands (Carchietta), supra* (p. 376): " Any other rule is not only unsound, but would be ridiculous. It would put it within the power of the racketeer to safeguard himself against prosecution by the simple device of extending his operations beyond the territorial limits of a State and making sure that his lieutenants are given extraterritorial duties in connection with his operations. The law is not so powerless."

Despite this conviction on the part of Mr. Justice BENVENGA it is significant to note that he was mindful of the danger of self incrimination on the part of the movants insofar as other jurisdictions are concerned and he indicated that he would protect the movants if they were able to show that the danger of such prosecution was real and substantial. In that important respect the court stated (p. 377): " It is the duty of the court under such circumstances to protect the witness from any disclosures which might expose him to prosecution in the foreign jurisdiction."

The other point made by the contemners that the stipulation entered into by the New York State Crime Commission and Thomas Lucchese infringes their constitutional rights is far-fetched and has no pertinency or bearing upon the issues presented here.

Since the court is convinced that the contemners have not shown that there are any debatable or arguable questions which merit appellate consideration, their applications are denied.

Settle order on notice.